J-S13045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.T.W., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| M.J.T., | |
| Appellant | No. 1809 WDA 2014 |

Appeal from the Order entered October 2, 2014,
in the Court of Common Pleas of Mercer County,
Civil Division, at No: 2007-3764

BEFORE: BENDER, P.J.E., MUNDY, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                     **FILED MAY 12, 2015**

M.J.T. (Father) appeals from the order entered October 2, 2014, in the Court of Common Pleas of Mercer County, which found him in contempt of a January 31, 2012 custody order, and which temporarily awarded additional custodial time of his minor daughter, A.A.J.T. (Child), to Child's mother, S.T.W. (Mother). We affirm in part and vacate in part.

On December 26, 2007, the trial court entered an order awarding Mother and Father shared legal and physical custody of Child. The order specified that the parents would continue to share physical custody "as per their current practice." Order, 12/26/07, at 1. On June 24, 2008, an order was entered modifying the prior custody order by providing that the parents "shall share custody on an alternating weekly basis with the exchange time being 7:00 p.m. each Sunday." Order, 6/24/08, at 1. On January 31, 2012,

an order was entered amending the June 24, 2008 order by providing that "the parties' shared physical custody shall run from 8:00 a.m. on Tuesday through 8:00 a.m. on Tuesday . . . ." Order, 1/31/12, at 1. The order further provided, in relevant part, as follows.

> 2. The natural father shall not pick the child up from school unless the school calls indicating there is no one there to pick the child up. The prohibition only applies to those periods of time when the natural mother is exercising physical custody. If the natural father is required to pick up the child during the mother's period of custody, he shall return the child to the natural mother at the conclusion of her work, which is typically 6:30 p.m.

*Id.* at 1-2.

On August 21, 2014, Mother filed a *pro se* petition for civil contempt against Father, in which she alleged that Father "[n]ever [b]rings [C]hild back on time," that Father does not answer his phone, and that she was having difficulty locating Child. Petition for Civil Contempt for Disobedience of Custody Order, 8/21/14, at 1-2. A hearing was held on October 1, 2014, during which the court heard the testimony of Mother and Father. Following the hearing, on October 2, 2014, the court entered its order finding Father in contempt and awarding Mother periods of make-up time with Child. Specifically, the order provided that Mother's next four periods of custody would be for two weeks, rather than the normal one week. The court clarified its order by noting that, after Mother's make-up time, "the regular custody schedule shall remain in full force and effect." Order, 10/2/14, at 1.

- 2 -

On October 31, 2014, Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Father now raises the following issue on appeal. "Did the trial court err in finding [Father] in contempt of court and in modifying the custody order?" Father's brief at 4.

We consider Father's claim mindful of our well-settled standard of review.

> When we review a trial court's finding of contempt, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt. This [C]ourt also has stated that each court is the exclusive judge of contempts against its process.

*G.A. v. D.L.*, 72 A.3d 264, 269 (Pa. Super. 2013) (citations and quotation marks omitted).

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*P.H.D. v. R.R.D.*, 56 A.3d 702, 706 n.7 (Pa. Super. 2012) (citation omitted).

Instantly, Father concedes that he is obligated under the January 31, 2012 custody order to return Child to Mother's care after she returns from work during her custodial periods. Father's Brief at 11-12. However, Father contends that he should not be held in contempt because the subject order did not obligate him to ensure that a custody transfer actually takes place.

- 3 -

*Id.* Father also asserts that it was impossible for him to comply with the order because Mother refused to communicate with him over the phone. *Id.* at 12-13. Further, Father argues that the trial court erred by modifying the January 31, 2012 custody order without considering the best interest of Child. *Id.* at 13-14. Father requests that this Court award him with the custody time that he missed as a result of the trial court's contempt order. *Id.* at 14.[1]

In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court explained that it found Father in contempt because he kept Child from Mother for two months, and that "[b]y definition, that is willful contempt." Trial Court Opinion, 11/3/14, at 2. The court also explained that it did not modify the subject custody order, but merely provided Mother with "make-up time equal to the time [Mother] lost as a result of [Father's] contempt." *Id.*

---

[1] We note that the trial court's modified custody schedule lasted only until December of 2014, and that the parties are, presumably, once again adhering to the custody schedule outlined in the January 31, 2012 order. However, this does not require that we dismiss Father's appeal as moot. *See Warmkessel v. Heffner*, 17 A.3d 408, 413 (Pa. Super. 2011), *appeal denied*, 34 A.3d 833 (Pa. 2011). In *Warmkessel*, the appellant was held in contempt and incarcerated as a result of his failure to pay child support. *Id.* at 411. By the time this Court reviewed his appeal, the appellant had been released from incarceration. *Id.* at 413. Nonetheless, the Court addressed the merits of the appellant's claims. We reasoned that, "Appellant is subject to a continuing support order where Appellant might once again face civil contempt proceedings raising the issue of credit for time served, and other similarly situated defendants might raise the same claim. Therefore, this matter qualifies as an exception to the mootness doctrine." *Id.* (citations omitted). This rationale also applies to the instant matter, as Father remains subject to the January 31, 2012 custody order.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion by finding Father in contempt. During the October 1, 2014 contempt hearing, Mother testified that Father picks up Child from school on Tuesdays and Fridays during Mother's custodial periods. N.T., 10/1/14, at 5. Mother then picks up Child at Father's house at about 6:30 p.m. *Id.* at 3.[2] However, Mother explained that she has had difficulty picking up Child on time and that, "every so often," she is unable to retrieve Child until "maybe 8:00 or 9:00 at night," because Child is not at Father's home, and Child will not answer her phone. *Id.* Mother stated that this has happened "maybe 20" times. *Id.*

Mother further testified that she "practically didn't see" Child during August and September of 2014. *Id.* at 4. Specifically, Mother stated that she saw Child on July 29, 2014, and that she did not see Child again until "the first week of school." *Id.* at 3. Mother further stated that Father did not answer his phone when she attempted to call him, and that she tried calling from different numbers and having her mother try to contact Father as well. *Id.* at 4. Mother explained that she has even called 911 in an effort to get Child back. *Id.*

On cross-examination, Mother admitted that she changed her phone number in "the last several months," but she denied that Father has been unable to contact her due to her different number. *Id.* Mother also noted

---

[2] Mother noted that Child walks to her paternal grandmother's house on Wednesdays and Thursdays, and that Mother picks Child up there. N.T., 10/1/14, at 5.

that she and Father are not on speaking terms, and that all custody exchanges are coordinated through Child, who has a cell phone. *Id.* at 6.

Father testified that he has been unable to contact Mother because she changed her phone number, and did not provide him with her new number. *Id.* at 7. Father stated that he has had the same phone number since Child was born, but that Mother has not sent him a text message or left him a voicemail since "Junish." *Id.* at 8. Father further explained that Child has a difficult time getting a response from Mother when she tries to contact her. *Id.* at 9. Father contended that Mother had regular custody of Child in July of 2014, but that, after July, Mother did not attempt to pick up Child. *Id.* at 9-10. Father stated that normally, Mother would "pull up to the house after work, blow the horn, call the phone and get [Child]. That did not take place." *Id.* at 10-11. Father stated that, if Mother did attempt to retrieve Child, she "made no attempt to contact me." *Id.* at 11.

Father further testified that Mother saw Child in August of 2014 "down at my niece's and nephew's house," but that Mother did not have custody of Child during that month. *Id.* at 12. Father also explained that Mother had custody of Child for a few days during September, about a week before the contempt hearing. *Id.* at 12-13. Father stated that Mother did not pick up Child the week of the contempt hearing. *Id.* at 13. According to Father, Mother did not call him, and did not come to his house. *Id.*

Thus, the record confirms that Mother did not have custody of Child for approximately two months. While we agree with Father that the January 31,

2012 custody order does not obligate him to ensure that custody exchanges actually take place, it is undisputed that Father had a duty to return Child to Mother during her periods of custody. Mother testified that Father ignored her attempts at communication during these times, and thereby violated the order by preventing her from exercising her custodial rights. In addition, while Father testified that Mother did not attempt to exercise her periods of physical custody, and that he was unable to contact Mother due to her changed phone number, the trial court was free to reject Father's testimony as incredible. Accordingly, we affirm the portion of the trial court's October 2, 2014 order finding Father in contempt.

However, we reach a different result with respect to the portion of the court's order awarding Mother make-up time with Child. We agree with Father that, to the extent the trial court "modified" the custody order by temporarily awarding Mother additional custodial time, it erred by failing to consider the best interest of Child. *See S.W.D. v. S.A.R.*, 96 A.3d 396, 403 (Pa. Super. 2014) (observing that courts must always consider the best interest of the child when considering an award or modification of custody). Moreover, even if the trial court is correct that it did not "modify" the custody order, but merely sanctioned Father for his contempt, the court still erred by imposing an impermissible sanction under the Child Custody Act. The Act provides, in relevant part, as follows.

**(g) Contempt for noncompliance with any custody order.--**

(1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(i) Imprisonment for a period of not more than six months.

(ii) A fine of not more than $500.

(iii) Probation for a period of not more than six months.

(iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

(v) Counsel fees and costs.

(2) An order committing an individual to jail under this section shall specify the condition which, when fulfilled, will result in the release of that individual.

23 Pa.C.S.A. § 5323(g).

When interpreting a statute,

we are constrained by the rules of statutory interpretation, particularly as found in the Statutory Construction Act. The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from arguments based on legislative history or "spirit" of the statute. We must construe words and phrases in the statute according to rules of grammar and according to their common and approved usage . . . .

***Weiner v. Fisher***, 871 A.2d 1283, 1285-86 (Pa. Super. 2005), *appeal denied*, 936 A.2d 41 (Pa. 2007) (citations and quotation marks omitted).

Here, Section 5323(g)(1) indicates that "[c]ontempt shall be punishable by any one or more" of the sanctions listed at Sections 5323(g)(1)(i)-(v). 23 Pa.C.S.A. § 5323(g)(1). Critically, a temporary modification of custody is not listed as one of the permissible sanctions under Section 5323(g)(1). Further, nothing in the language of Section 5323(g)(1) suggests that a court is permitted to employ sanctions outside of those enumerated above. Thus, based on the plain and unambiguous language of the Act, we conclude that the trial court erred by awarding Mother with additional custodial time as a sanction for Father's contempt.[3]

---

[3] We note that this Court has held that "a lower court may not modify a custody order as a sanction for contempt of such an order, unless a petition to modify custody has been filed and all parties have been provided with notice and opportunity to prepare and advocate their respective positions." ***G.A.***, 72 A.3d at 269-70 (citing ***Langendorfer v. Spearman***, 797 A.2d 303 (Pa. Super. 2002); *see also* ***P.H.D.***, 56 A.3d at 706; ***Choplosky v. Choplosky***, 584 A.2d 340 (Pa. Super. 1990). However, ***G.A.***, ***Langendorfer***, ***P.H.D.***, and ***Choplosky*** all involved situations where a trial court modified a custody order permanently. In addition, this Court's holding in ***Choplosky***, from which its later holdings in ***Langendorfer***, ***P.H.D.***, and ***G.A.*** were derived, was specifically limited to permanent modifications of custody. *See* ***Choplosky***, 584 A.2d at 342-43 (explaining that the trial court erred by permanently modifying custody following a contempt hearing, but suggesting that a temporary modification may be permissible); *see also* ***Langendorfer***, 797 A.2d at 308 ("Father contends that the court may not **permanently** modify a custody order without having a petition for modification before it. We agree.") (citation omitted, emphasis added); ***P.H.D.***, 56 A.3d at 706 ("We have expressly held that a trial court 'may not **permanently** modify a custody order without having a petition for modification before it.'") (quoting ***Langendorfer***, 797 A.2d at 308) (emphasis added). Thus, these cases are distinguishable from the instant

- 9 -

Accordingly, we vacate the portion of the trial court's order temporarily adjusting the parties' custody schedule. The court's order is affirmed in all other respects.

Order affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2015

---

matter, where the trial court only modified the parents' custody schedule temporarily.